IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| ADARIUS CLARK o/b/o SHUMEKIA CLARK, | |
| Plaintiff, | CIVIL ACTION NO.: 5:20-cv-105 |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Maribeth McMahon ("the ALJ" or "ALJ McMahon") denying Shumekia Clark's (the "Claimant") claim for Supplemental Security Income and Disability Insurance Benefits.[1]  Plaintiff urges the Court to reverse the ALJ's decision.  Docs. 17, 19.  Defendant asserts the Commissioner's decision should be affirmed.  Doc. 18.  For the reasons which follow, I **RECOMMEND** the Court **REMAND** this case to the Commissioner under sentence four of 42 U.S.C. § 405(g).  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment.

**BACKGROUND**

Claimant filed an application for Disability Insurance Benefits and Supplemental Security Income on July 31, 2017, alleging an onset date of February 5, 2017.  R. 24.[2]  On June 21, 2018,

---

[1] Plaintiff's mother, Shumekia Clark, died on October 7, 2019.  R. 10, 46–47.  Plaintiff was substituted as a party in this action on his mother's behalf on May 27, 2020.  R. 9, 335–36.

[2] A transcript of the entire proceedings before the Social Security Administration appears at Document Numbers 13-1 through 13-15.  Although the transcript is broken into multiple PDF documents, each with its own CM/ECF docketing number, the transcript bears individual page numbers that run

ALJ McMahon held a hearing at which Claimant, who was represented by counsel, appeared and testified.  Id.  Beth Crain, a vocational expert, also appeared at the hearing.  Id.  ALJ McMahon denied Claimant's claim for disability after the hearing in a decision issued on October 21, 2019.  R. 24–39.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1.

Claimant, born on March 18, 1974, was 42 years old at the time of the alleged onset date and would have been 45 years old at the time of the ALJ's decision in 2019.  R. 38.  Claimant had a limited education and previously worked as a child monitor, cashier checker, automobile detailer, and fast-food worker.  R. 37–38.

## DISCUSSION

**I.     The ALJ's Findings**

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

---

sequentially through the entire transcript.  Record citations in this Report (identified with "R.") are to the individual transcript page numbers.  For efficiency, no reference to the CM/ECF docketing number or the respective PDF page numbers is provided here.

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

      The first step determines if the claimant is engaged in "substantial gainful activity."  Id.  If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.  Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

      If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments."  Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her

age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Claimant did not engage in substantial gainful activity since her alleged onset date, February 5, 2017. R. 27. At step two, ALJ McMahon determined Claimant had the following severe impairments: degenerative disc disease, hypertension, gastroesophageal reflux disease, obesity, bipolar disorder, and post-traumatic stress disorder ("PTSD"). Id. The ALJ also determined Claimant had several non-severe medical impairments, including gastritis and vision issues. Id. At the third step, the ALJ determined Claimant's impairment or combination of impairments did not meet or medically equally the severity of a listed impairment. R. 27–29. The ALJ found Claimant had the residual functional capacity ("RFC") to perform work at the light exertional level with the following modifications: she can lift and carry up to 20 pounds occasionally and 10 pounds frequently; she can stand, sit, or walk each for 30 minutes at a time for a total of six hours in an eight-hour workday with normal breaks; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, or crawl; avoid concentrated exposure to vibrations, unprotected heights, and dangerous machinery; she is able to understand, remember, and carry out simple instructions and non-detailed tasks; she is able to maintain attention and concertation for two-hour segments over an eight-hour period and complete a normal work-week; interact occasionally with supervisors and coworkers sufficient for task completion; no contact with the public; she is able to adapt to situation changes with routine support and structure; and she should avoid hazards in a work setting. R. 29. At the next step, the ALJ noted Claimant was unable to perform any past relevant work. R. 37. The ALJ concluded at the fifth and final step

Claimant could perform jobs such as inspector/hand packager, shipping/receiving weigher, and cleaner/polisher, all of which exist in significant numbers in the national economy. R. 38.

## II. Issue Presented

Plaintiff asserts the ALJ erred because: (1) she improperly rejected the opinion of Claimant's doctor, Dr. Barton, without providing reasons supported by substantial evidence; (2) she impermissibly relied on her own lay interpretation of the medical evidence to determine Claimant's RFC; and (3) the ALJ failed to consider the impact of Claimant's edema on her RFC. Doc. 17 at 1, 4.

## III. Standard of Review

It is well-established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.

Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

### IV. Whether the ALJ Properly Evaluated Dr. Barton's Opinion

Plaintiff argues the ALJ rejected the opinion of Claimant's doctor, Dr. Louis Barton, without providing reasons supported by substantial evidence. Doc. 17 at 9–15. Plaintiff contends the ALJ's analysis of Dr. Barton's opinion regarding Claimant's mental limitations fails because the ALJ did not explain how Dr. Barton's opinion was inconsistent or unsupported by the medical evidence in the record. Id. at 11–12. Plaintiff also argues evidence supports Dr. Barton's opinion, which the ALJ did not address. Id. at 12–14. In sum, Plaintiff argues the ALJ's analysis of Dr. Barton's opinion fails to address supportability and consistency of the opinion, despite the requirement the ALJ do so.

Defendant argues substantial evidence supports the ALJ's finding the opinion of Dr. Barton was unpersuasive. Doc. 18 at 10. Defendant contends the ALJ properly noted Dr. Barton's opinion is not supported by the medical evidence, and Defendant also explains why medical evidence does not support Dr. Barton's opinion. Id. 10–11. Further, Plaintiff has failed

6

to show Dr. Barton's opinion is consistent with evidence in the record or supported by substantial evidence. Id. at 11–12. Defendant points to evidence in the record showing Dr. Barton's opinion is inconsistent with the medical records from other medical professionals who examined and treated Claimant, and, therefore, substantial evidence supports the ALJ's finding. Id. at 12–15. Finally, Defendant argues any error of the ALJ for failing to discuss evidence supporting her conclusion regarding Dr. Barton's opinion is harmless. Id. at 15–16.

### A.      Legal Standard

An ALJ looking at medical opinions "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a); see Works v. Saul, No 4:19-CV-1515, 2021 WL 690126, at *15, 24 (N.D. Ala. Feb. 23, 2021).[3] Instead, "when evaluat[ing] the persuasiveness of medical opinions," the ALJ "will consider those medical opinions . . . using the factors listed . . . the most important factors . . . [being] supportability . . . and consistency." 20 C.F.R. § 416.920c. For purposes of medical opinions, supportability relates to "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinions" while consistency relates to "the more consistent a medical opinion. . . . is with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(1)–(2). The ALJ must articulate how supportability and consistency "were considered for a medical sources opinion, but an ALJ is not required to articulate consideration of the remaining factors."

---

[3]      On January 18, 2017, the Social Security Administration substantially revised the Regulations governing how the Commissioner considers medical evidence, including medical opinions. See 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). Those revisions apply to claims filed on or after March 27, 2017, and are therefore applicable in this case. Compare 20 C.F.R. § 416.920c (applicable to claims filed on or after on or after March 27, 2017) with 20 C.F.R. § 416.927 (applicable to claims filed before March 27, 2017).

Anthony v. Kijakazi, CV 120-110, 2021 WL 4304725, at *3 (S.D. Ga. Sept. 3, 2021) (citing 20 C.F.R. §416.920c(b)(2) and Uresi v. Comm'r of Soc. Sec., No. 2:20-CV-367-MAP, 2021 WL 2644549, at *4 (M.D. Fla. June 28, 2021)).  The ALJ must "provide sufficient detail concerning the degree to which he finds a medical source's opinion persuasive so that a reviewing court may understand the ALJ's analysis."  Works, 2021 WL 690126 at *15 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011)); see Jackson v. Soc. Sec. Admin., Comm'r, 779 F. App'x 681, 684 (11th Cir. 2019).[4]

**B.     Analysis**

The ALJ discussed Dr. Barton's opinion regarding Claimant's mental RFC.  Dr. Barton was Claimant's treating psychiatrist, who she saw regularly—at least once every three months—for mental health treatment.  R. 30.  On June 12, 2019, Dr. Barton provided a mental RFC assessment of Claimant.  R. 1265–69.  Claimant had been seeing Dr. Barton for several months at the time of the June 12, 2019 assessment.  R. 136, 145.  The ALJ found Dr. Barton's RFC opinion to be "unpersuasive and not supported by the medical evidence."  R. 36.  Additionally, ALJ McMahon criticized Dr. Barton's opinion because he did not perform any diagnostic testing related to Claimant's impairments.  Id.

ALJ McMahon must assess consistency and supportability of medical opinions, which required the ALJ to articulate whether Dr. Barton's opinion is supported by the objective medical evidence and supporting explanations and whether his opinion is consistent with the other medical and non-medical sources in the record.  See, e.g., Cook, 2021 WL 1565832, at *3

---

[4]     In revising the Regulations to remove the treating source rule, the Social Security Administration explained, "[U]nder the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether *substantial evidence* supports our final decision[.]"  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (emphasis added).  Accordingly, nothing in the revised Regulations alters the requirement the ALJ's decisions be supported by substantial evidence.

("Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record."). Here, the ALJ's assessment fails to adequately address supportability and consistency.

In assessing the persuasiveness of Dr. Barton's mental RFC assessment (which contained Dr. Barton's opinions on Plaintiff's limitations), ALJ McMahon stated:

> The undersigned finds Dr. Barton's opinions to be unpersuasive and not supported by the medical evidence. Further, Dr. Barton admits he performed no testing to determine whether the claimant's physical and/or mental impairment resulting from anatomical, physiological or psychological abnormalities were shown by acceptable clinical and/or laboratory diagnostic techniques. He further stated no testing was done to determine whether the claimant's impairments could reasonably be expected to produce the functional limitations to which the doctor opined.

R. 36. Presumably, the ALJ is trying to address the consistency factor in § 416.920c when she discusses Dr. Barton's opinion relative to "the medical evidence." See 20 C.F.R. § 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). However, the ALJ does not describe or cite to any other medical evidence in the record, which prevents meaningful review of the ALJ's assessment. This terse treatment prevents the Court from understating ALJ McMahon's analysis and evaluating whether it is supported by substantial evidence. Works, 2021 WL 690126, at *15; Hanna v. Astrue, 395 F. App'x 634, 636 (11th Cir. 2010) ("The ALJ must state the grounds for [her] decision with clarity to enable us to conduct meaningful review.").

In her brief, the Commissioner attempts to identify medical evidence in the record she contends is inconsistent with Dr. Barton's opinions. But the Commissioner's explanations are

9

merely *post-hoc* rationalizations, which this Court cannot consider.  Dempsey v. Comm'r of Soc. Sec., 454 F. App'x 729, 733 (11th Cir. 2011) (explaining a court will not affirm based on a *post hoc* rationale that "might have supported the ALJ's conclusion") (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984)); NLRB v. Ky. River Cmty. Care, Inc., 532 U.S. 706, 715 n.1 (2001) (explaining a court reviewing administrative agency action may not "substitute counsel's *post hoc* rationale for the reasoning supplied by the" agency itself).

ALJ McMahon's articulation of the supportability factor is also deficient.  Dr. Barton treated Plaintiff from October 26, 2018 to at least June 12, 2019, and the record includes numerous treatment records from Dr. Barton.  R. 1249–70.  Claimant saw Dr. Barton five times between October 26, 2018 and June 12, 2019, and would also call a therapist or counselor associated with his office as needed.  R. 136 ,145, 1249–70.  Dr. Barton provides a narrative assessment of Claimant and also recounts the various medications she is taking for her mental health, including Xanax and Zoloft, as well as adding a prescription for Zyprexa for mood stability.  R. 1249–50.  Additionally, Dr. Barton diagnosed Claimant with agoraphobia with panic disorder, major depressive disorder with recurrent severe without psychotic features, and chronic post-traumatic stress disorder.  R. 1250.

These records provide at least some support for Dr. Barton's opinions.  In assessing the persuasiveness of Dr. Barton's RFC assessment, the ALJ did not discuss any of the findings and conclusions contained in Dr. Barton treating records.  As a result, the ALJ failed to explain how or why those findings and conclusions did not support Dr. Barton's opinions.  Instead, the ALJ merely suggests Dr. Barton's opinion is not supported because Dr. Barton did not perform any diagnostic testing.  R. 36.  This is insufficient, given the importance of Dr. Barton's opinion and numerous records related to Dr. Barton's treatment of Claimant.  The mere fact Dr. Barton noted

on the RFC assessment that he had not performed diagnostic testing is not enough to find Dr. Barton's opinions wholly unpersuasive.  Again, because of this terse treatment and failure to address any of the explanations Dr. Barton did provide, it is impossible for the Court to determine whether the ALJ's assessment of Dr. Barton's opinion is supported by substantial evidence.  Himes v. Comm'r of Soc. Sec., 585 F. App'x 758, 765 (11th Cir. 2014) ("Even if it is possible that the ALJ considered and rejected medical opinions, without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence.") (cleaned up).

Defendant argues even if the ALJ's assessment of Dr. Barton's opinion is incomplete, any error is harmless.  Doc. 18 at 15–16.  Defendant's argument fails to consider the importance of Dr. Barton's opinions.  Dr. Barton rated Claimant's ability to concentrate as 1 out of 5 because of her chronic pain and frequent anxiety attacks.  Dr. Barton rated Claimant a 1.5 out of 5 on her ability to maintain attention for two-hour segments.  And Dr. Barton concluded Claimant would need to disengage from productive activity for unscheduled breaks due to her panic attacks and chronic pain.  R. 1266–67.  Finally, Dr. Barton found Claimant's conditions would require her to miss four or more days of work month.  R. 1268.

The vocational expert testified at the hearing there would be no competitive employment if an individual with Claimant's impairments were off-task 15 percent or more of an eight-hour workday.  R. 166.  Considering Dr. Barton's assessment and the vocational expert's testimony together, it is possible—though not clear from the record—Claimant's impairments could cause her to need unscheduled breaks would result in her being off-task more than 15 percent of the day, meaning there would be no competitive work for Plaintiff.

11

It is clear, however, if the ALJ had found Dr. Barton's opinions persuasive about the number of days a month Claimant would miss a month, there would be no available competitive employment. Dr. Barton found Claimant's impairments would cause her to miss four or more days a month, while the vocational expert testified there would no competitive employment if Claimant missed three days or more a month. R. 166–67. Therefore, if the ALJ had found Dr. Barton's opinion persuasive and incorporated his opinion on how many days Claimant would miss a month into her RFC determination, then there would have been no available competitive work for an individual with Claimant's impairment. As a result, the ALJ would have been constrained to find Claimant disabled.

Thus, the undersigned cannot conclude any error was harmless where crediting Dr. Barton's opinion would result in a finding of disability. See Denomme v. Comm'r, Soc. Sec. Admin., 518 F. App'x 875, 877 (11th Cir. 2013) (explaining an error is harmless if "the correct application would not contradict the ALJ's ultimate findings") (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983)); Majors v. Kijakazi, No. 8:19-CV-2934, 2021 WL 4026271, at *7 (M.D. Fla. Sept. 3, 2021) ("Because the [vocational expert] found there were no jobs in the national economy which the Plaintiff could perform given the restrictions described in [the doctor's] November 2018 medical source statement, including the Plaintiff's need to miss work three or more days per month, the ALJ's failure to clearly articulate and substantiate his decision to discount [the doctor's] opinions cannot be considered harmless."); Daniels v. Saul, No. 19-63034-CIV, 2021 WL 1049512, at *4 (S.D. Fla. Mar. 18, 2021) (explaining an ALJ's failure to properly consider a doctor's RFC assessment is not harmless error). Because the persuasiveness of Dr. Barton's opinion would have a material impact on the finding of disability, the ALJ's error was not harmless.

To be clear, the undersigned takes no stance on the correctness of Dr. Barton's opinion and is not suggesting the ALJ must, or should, grant his opinions any weight, let alone substantial weight. Dyer, 395 F.3d at 1210 ("[The court] may not decide facts anew, reweigh the evidence, or substitute [the court's] judgment for that of the Commissioner."). Rather, if the ALJ discredits Dr. Barton's opinion, she must explain her decision to do so, particularly with respect to supportability and consistency. Pierson v. Comm'r of Soc. Sec., No. 6:19-cv-01515, 2020 WL 1957597 at *6 (M.D. Fla. Apr. 8, 2020) ("[T]he new regulations require an explanation, even if the ALJ (and the Commissioner) believe an explanation is superfluous."), *report and recommendation adopted*, 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020). Without such guidance from the ALJ, the undersigned is unable to exercise meaningful judicial review.

Accordingly, I **RECOMMEND** the Court **REMAND** the case to the Commissioner for further consideration. Given my recommendation, I decline to address Plaintiff's remaining enumerations of error.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **REMAND** this case to the Commissioner under sentence four of 42 U.S.C. § 405(g). I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint or argument raised in a brief must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a

party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 31st day of January, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA